# UNITED STATES DISTRICT COURT

## District of New Jersey

Chambers of
**William H. Walls**
District Judge
————

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

<u>NOT FOR PUBLICATION</u>

<u>LETTER MEMORANDUM</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

August 14, 2006

**Appearances:**

Arthur D. Grossman, Esq.
Fox and Fox, LLP
70 South Orange Avenue
Livingston, New Jersey 07039
      Attorney for Plaintiff Wexco Industries, Inc.

Darren C. Barreiro, Esq.
Greenbaum Rowe, Smith & Davis, LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
      Attorney for Defendant Tru Vision, Inc.

Re:   <u>Wexco v. Diesel Equipment and Tru Vision LLC</u>; No. CIV06-02106 (WHW)
      Defendant Tru Vision Inc.'s motion to dismiss for lack of personal jurisdiction

Dear Litigants:

      Defendant Tru Vision, LLC (incorrectly named "Tru Vision, Inc." in the Verified

Complaint and hereinafter referred to as "Tru Vision") moves to dismiss for lack of personal

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  The motion is granted.

1

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Wexco, Inc. ("Wexco") is a New Jersey corporation that manufactures and distributes windshield wiper systems for use on all types of vehicles.  Defendant Diesel Equipment Co. ("Diesel") is a North Carolina corporation that distributes windshield wiper systems to the Recreational Vehicle Original Equipment Market in North America.  Defendant Tru Vision is an Indiana corporation engaged in the distribution and supply of windshield wiper systems.

In June of 2003, Wexco and Diesel entered into a Supply Agreement wherein Diesel agreed to exclusively acquire and Wexco agreed to exclusively supply windshield wiper systems. Within the Supply Agreement, was a confidentiality clause, which provided that each party would not disclose any confidential information supplied by either party for five years from the date of termination of the Agreement.  Tru Vision is currently supplying windshield wipers that are competitive with and are a substitute for the windshield wiper systems supplied by Wexco to Diesel.

The Supply Agreement further stipulated that all business conducted would be governed and interpreted by the laws of New Jersey.  All disputes were to be resolved in the Federal and State Courts located in Essex County, New Jersey, and each party would submit themselves to jurisdiction in New Jersey.

From June 2003 to the present, Wexco has continued to exclusively supply windshield wiper systems to Diesel.  Wexco has also provided Diesel with confidential and proprietary information such as pricing information, product samples, marketing and new product

2

development plans, and proprietary product engineering drawings.  Specifically, at a Las Vegas meeting in November 2005, Diesel accepted a copy of a notebook containing proprietary and confidential information.  A Non-Disclosure Agreement was signed, stating that no portion of the information contained in the notebook should be made available to third parties without the prior written consent of Wexco.

During the summer of 2005, Tru Vision entered into an agreement with Diesel where Diesel was licensed to sell the recreational windshield wiper products distributed by Tru Vision. The agreement between Tru Vision and Diesel was negotiated and signed in Indiana and North Carolina.

Wexco has brought suit alleging that a confidentiality clause in the Supply Agreement with Diesel was violated because Diesel allegedly shared Wexco's confidential product drawings with Tru Vision.  Wexco also alleges that upon information and belief, Diesel is planning to replace Wexco as a supplier after Tru Vision replicates Wexco's products. Based on these facts, Wexco alleges that Diesel breached its obligations of confidentiality under the Supply Agreement and Non-Disclosure Agreement and that Tru Vision has tortiously interfered with the contractual relationships of Wexco and Diesel as well as the prospective economic advantage of Wexco.

Tru Vision now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum

state in which the district court sits." See Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 31 (3d Cir.1993).  New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution.  See N.J. Ct. R. 4:4-4; Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981).  The question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law.  See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958).  It is the burden of the plaintiff to prove that the defendant has purposefully availed himself of the forum state.  See Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that the defendant has purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  When a claim is related to or arises out of the defendant's contacts with the forum, personal jurisdiction pursuant to such contacts is referred to as specific jurisdiction.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

To satisfy specific jurisdiction, a court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297

4

(1980) (citations omitted).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  Hanson, 257 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation."  Keeton v. Hustler, 465 U.S. 770 (1984).  There must be at least  "a single deliberate contact" with the forum state that relates to the cause of action.  United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff, however, will not amount to minimum contacts.  Helicopteros, 466 U.S. at 414; Hanson, 257 U.S. at 253.

        Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King Corp., 471 U.S. at 476 (quoting Int'l. Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir.1998).  This second inquiry need only be applied at a court's discretion.  See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1222 (3d Cir. 1992) (citing Burger King Corp., 471 U.S. at 476-77).  However, courts have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction.  See, e.g., Mesalic v. Fiberfloat Corporation, 897 F.2d 696, 701-02 (3d Cir.1990) (considering notions of "fair play and substantial justice" in deciding issue of personal jurisdiction).  For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  See World-Wide Volkswagen Corp., 444 U.S. at 292.  To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the

interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies. Id. Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." Asahi Metal Industry Co. v. Super. Ct. of Cal., 480 U.S. 102, 116 (1987).

　　　If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state. Helicopteros, 466 U.S. at 416. To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

　　　The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiffs. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 and n.9 (3d Cir. 1984). See also Stranahan Gear Co. v. NL Industries, Inc., 800 F.2d 53, 58 (3d Cir. 1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's burden of proof). The plaintiff need only make a *prima facie* showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Farino, 960 F.2d at 1223. In reviewing a motion to dismiss, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir. 1992).

**DISCUSSION**

When a defendant challenges personal jurisdiction on the basis of Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to show proof that can establish with "reasonable particularity," the extent of defendant's contacts within the forum state.  See Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir.), cert. denied, 498 U.S. 812 (1990).  Tru Vision asserts that it is not subject to either general or specific jurisdiction and that Wexco fails to demonstrate any contacts with New Jersey that would subject Tru Vision to this Court's jurisdiction. Wexco, however, contends that jurisdictional discovery should be allowed to demonstrate that under the doctrines of stream of commerce and tortious interference, Tru Vision is subject to personal jurisdiction.

This Court finds that plaintiff has not, and can not establish that Tru Vision has sufficient contacts with New Jersey sufficient to establish personal jurisdiction over Tru Vision.

**A.      General Jurisdiction**

Tru Vision is a limited liability company formed under the laws of Indiana in June 2005. Plaintiff does not dispute that Tru Vision does not directly distribute or sell products in New Jersey, has no customers in New Jerrsey, and does not own or rent property here.  Furthermore, it is clear that Tru Vision does not pay taxes in New Jersey and no employee or agent of Tru Vision has visited New Jersey for business related purposes.  As such, plaintiff has presented no evidence of any "continuous or systematic" conduct in New Jersey by Tru Vision to allow the Court to assert general jurisdiction over Tru Vision.

**B.      Specific Jurisdiction**

Analysis of whether minimum contacts exist on the basis of specific jurisdiction requires inspection of "the relationship among the forum, the defendant, and the litigation."  Shaffer v. Heitner, 433 U.S. 186, 204 (1997).  This is meant to ascertain whether defendant directed any activity purposefully towards the forum.  Furthermore, "a defendant will not be haled into a jurisdiction solely as a result of random, fictitious, or attenuated contacts, or based upon the unilateral activity of another person."  World-Wide Volkswagon Corp., 444 U.S. at 291.

As discussed, Tru Vision has no direct contacts with New Jersey.  In 2005, Tru Vision entered into an agreement with Diesel, a North Carolina corporation, that was the only entity licensed by Tru Vision to sell its windshield wiper products.  The agreement was signed in Indiana and North Carolina and indicates no contacts with New Jersey.  Moreover, Tru Vision cannot be subject to the clause of the 2003 Supply Agreement between Wexco and Diesel because Tru Vision was not a party in the agreement and accordingly, cannot be held to its terms. See Alexander v. Cigna Corp., 991 F. Supp. 427, 443 (D.N.J.), aff'd, 172 F.3d 859 (3d Cir. 1998) (holding that a defendant could not be subject to jurisdiction solely on the unilateral activity of another person).

*1.  Stream of Commerce*

 Minimum contacts can be created by a defendant placing a product into the stream of commerce, meaning that through a distribution chain, the product finds its way into the forum state.  See Asahi, 480 U.S. at 111.  However, there must be a substantial connection "between the defendant and the forum State necessary for a finding of minimum contacts."  Id. at 112.  The substantial connection needs to come from "*an action of the defendant purposefully directed*

8

*toward[s] the forum State*." Id. (emphasis in original).

Wexco relies on Asahi, World-Wide Volkswagon Corp., and Charles Gendler & Co. Inc. v. Telecom Equip. Corp., 102 N.J. 460, 477 (1986) to show that Tru Vision's placement of a product into the stream of commerce to be sold in New Jersey is enough to satisfy the minimum contacts necessary to establish personal jurisdiction.[1]   Wexco's reliance is misplaced because all three cases concern the establishment of specific jurisdiction.  Wexco mistakenly cites them in support of an assertion of general jurisdiction over Tru Vision by this Court.  See Pennzoil Products Co., 149 F.3d at 204 (noting that "courts have developed the 'stream of commerce' theory by which *specific jurisdiction* is asserted over a nonresident defendant . . . ) (emphasis added).

Wexco's claims do not arise out of the fact that the wiper products distributed by Tru Vision reached New Jersey through the stream of commerce. Instead, the claims arise from the distribution agreement that Tru Vision entered into with Diesel in Indiana and North Carolina.

In general, it is possible for a forum state to exercise jurisdiction over an out of state corporation "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."  World-Wide Volkswagon Corp., 444 U.S. at 298.  In World-Wide Volkswagon Corp., plaintiffs sought personal jurisdiction in a products liability suit over a New York automobile seller in an Oklahoma state court arising out of injuries sustained to plaintiffs during an accident in Oklahoma.  Plaintiffs cause of action arose under actions directly related to the manufacturer that caused physical injury in Oklahoma.  However,

---

[1]  Although Wexco does not allege that Tru Vision's products are sold in New Jersey, Wexco argues that dismissal is inappropriate before Wexco has taken jurisdiction discovery in order to prove this point.  As discussed below however, such discovery is not availing to plaintiff's assertion of jurisdiction.

the World-Wide Volkswagon Corp. court never addressed the stream of commerce standard as applied to the general jurisdiction framework. In this case, Wexco's cause of action did not arise from physical or economic injury caused by the windshield wipers themselves.

Following the decision in World-Wide Volkswagon Corp., the New Jersey Supreme Court explicitly endorsed the use of the stream of commerce theory "as a basis for asserting personal jurisdiction over a non-resident defendant." Charles Gendler & Co., 102 N.J. at 477. Charles Gendler & Co. addressed whether New Jersey courts had personal jurisdiction over an out of state manufacturer of a telephone system. The phone system was purchased in New Jersey by a New Jersey resident and plaintiff's claims involved defects to the phone system that occurred in New Jersey. Plaintiff, relying on Charles Gendler & Co., contends that although Tru Vision does not directly sell wiper blades in New Jersey, its placement of wiper products in the stream of commerce resulting in the possible eventual sale in New Jersey should not shield Tru Vision from jurisdiction in New Jersey. See Charles Gendler & Co., 102 N.J. at 481 (stating that if a manufacturer "knows its products are distributed through a nationwide distribution system," it "should reasonably expect that those products would be sold throughout the fifty states and that it will be subject to the jurisdiction of every state.").

Nothwithstanding the Charles Gendler & Co. court's holding, that court explicitly noted that there was no need to evaluate minimum contacts on the basis of "the stream of commerce theory *if plaintiff's cause of action were unrelated to defendant's contacts with the forum*." 102 N.J. at 482 (emphasis added). This distinction that was absent from Charles Gendler & Co., does mirror the facts of this case. That is to say, Wexco's claim does not arise from a sale of wiper blades in New Jersey or in any other state, but rather is based on an agreement signed in Indiana and North Carolina. The claims are not based on any physical or economic harm caused by the

wiper blades themselves.

Plaintiff's reliance on <u>Asahi</u> is also misplaced.  <u>Asahi</u> was a products liability suit brought in California Superior Court arising from a motorcycle accident allegedly caused by tire defects. The manufacturer of the tire tube filed a cross-complaint for indemnity against Asahi, the Japanese manufacturer of the tire tube's valve assembly.  In a plurality opinion authored by Justice O'Connor, the Supreme Court determined that the state court could not exercise jurisdiction over Asahi because "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." <u>Asahi</u>, 480 U.S. at 112.  As noted, the <u>Asahi</u> plurality opinion made clear that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." <u>Id.</u>  The Court's requirement that defendant purposefully direct his conduct toward the forum state provides a clear implication that the stream of commerce standard is intended to apply only in situations concerning specific jurisdiction.  <u>See</u> <u>Pennzoil Products Co.</u>, 149 F.3d at 204.  The rationale of Asahi does not extend to the outer contours of the more expansive general jurisdiction doctrine.[2]

In sum, the facts of <u>Asahi</u> are analogous to those of this case.  Tru Vision's act of placing wiper blades into the stream of commerce alone cannot be deemed a purposeful act directed towards New Jersey. The current cause does not arise from personal injuries to a New Jersey

---

[2]  To allow for personal jurisdiction in these circumstances would open the floodgates for manufacturers to be liable for their actions in any forum that their product may end up, even if a plaintiff's cause of action does not relate to the product.  If permitted, litigants could bring suit against large manufacturers in virtually every state.  Allowing such an expansive interpretation of personal jurisdiction is not supported by common sense or case law.  <u>See</u> <u>Asahi</u>, 480 U.S. at 112; <u>Charles Gendler & Co.</u>, 102 N.J. at 482.

resident or a claim of defect by a New Jersey consumer relating to Tru Vision's wiper blades. Tru Vision correctly notes that Wexco's claims do not arise out of the fact that windshield wiper products distributed by Tru Vision reached New Jersey. Instead, Wexco's claims against Tru Vision are based upon the distribution agreement entered into by Tru Vision with Diesel, negotiated and signed in Indiana and North Carolina. Wexco cannot establish general jurisdiction over Tru Vision regarding claims unrelated to the products that were placed in the stream of commerce, and any jurisdictional discovery would not alter this circumstance. As such, Wexco cannot establish minimum contacts to support personal jurisdiction through the stream of commerce analysis.

### 2. Tortious Interference

An intentional tort directed at, and having sufficient impact upon plaintiff in the forum state, may be sufficient to enhance otherwise insufficient contacts into minimum contacts. See Calder v. Jones, 465 U.S. 783 (1984); IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998). Wexco claims that Tru Vision, in concert with Diesel, knowingly misappropriated confidential information that belonged to Wexco and that this resulted in a tortious interference with Wexco's prospective economic advantage. Wexco asserts that the tortious interference by Tru Vision was intentionally directed towards Wexco in the state of New Jersey.

In IMO Industries, the Third Circuit examined other circuits' application of the Calder "effects test" as applied to business torts and established a framework for the application of the test in this circuit. IMO Industries dealt with a multinational corporate plaintiff with its principal place of business in New Jersey, suing a German corporate defendant for tortious interference in the District Court of New Jersey. Id. at 256. The plaintiff contended that personal jurisdiction over defendant in New Jersey was appropriate because of the alleged commission of an

intentional tort with effects allegedly felt by plaintiff in New Jersey.  Id.

      Ultimately, the Third Circuit decided that the result in Calder (upholding an assertion of personal jurisdiction over an author and editor of an allegedly defamatory article in the state which was the focal point of the article and the harm suffered) was entitled to a narrower construction in the context of business torts.  Id. at 260-61.  Consequently, the Circuit fashioned a three prong test to establish personal jurisdiction over a defendant in the context of a business tort.  Namely, plaintiff must show that 1) Defendant committed an intentional tort, 2) plaintiff felt the brunt of the harm in the forum such that the forum could be deemed the focal point of the harm suffered by the plaintiff, and 3) defendant expressly aimed tortious conduct at the forum such that the forum could be deemed the focal point of the activity.  Id. at 265-66; see also Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir.1995) (finding that activity within the forum is insufficient to establish minimum contacts when the focus of the dispute is outside the forum); Southmark Corp. v. Life Investors Inc., 851 F.2d 763, 773 (5th Cir.1988) (holding that the mere allegation that the plaintiff feels the effect of a defendant's tortious conduct in a forum in which the plaintiff is located is insufficient to show expressly aimed conduct).

      Even if Wexco could establish the first two prongs of the test set forth in IMO Industries, it cannot establish the third prong.  To satisfy the third prong,  plaintiff must "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  IMO Industries, 155 F.3d at 266.  The critical question is whether Wexco can demonstrate that Tru Vision expressly aimed its tortious conduct at New Jersey.

      Even if jurisdictional discovery is allowed, Wexco would still be unable to highlight any specific facts showing that Tru Vision's allegedly tortious conduct was explicitly aimed at New Jersey.  Tru Vision's deal to distribute windshield wiper products with Diesel forms the basis of

the alleged tortious conduct.  However, as discussed, Tru Vision and Diesel's distribution agreement was negotiated and signed in Indiana and North Carolina.  There are no facts that demonstrate any intention to engage in conduct aimed at New Jersey.

Ultimately, the Court finds that plaintiff fails to show that the allegedly tortious conduct by Tru Vision was expressly aimed at New Jersey.  Even if Tru Vision was aware that Wexco was a New Jersey company, and even if Tru Vision acted with the intent to tortiously interfere, jurisdiction in New Jersey would still be inappropriate.  Just because it is reasonably foreseeable that New Jersey could be affected by Tru Vision's acts does not make it sufficient to overcome an implication that New Jersey was not the focal point of the dispute.  See id. at 268.

Tru Vision's motion to dismiss for lack of personal jurisdiction is GRANTED.


_____ **s/ William H. Walls** _____
United States Senior District Judge